UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| STEVE W. LANE, AS GUARDIAN PROCHEIN AMI FOR JANE "A.B." DOE, A MINOR AND INCAPACITATED PERSON;<br><br>          Plaintiff,<br><br>     vs.<br><br>UNITED STATES OF AMERICA,<br><br>          Defendant. | CIV. NO. 20-00207 LEK-RT |

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT [ECF NO. 83]**

Before the Court is Defendant United States of America's ("Defendant") Motion to Dismiss Plaintiff's Amended Complaint [ECF No. 83] ("Motion"), filed on June 17, 2024. [Dkt. no. 86.] Steve W. Lane ("Lane"), as Guardian Prochein Ami for minor Jane "A.B." Doe ("A.B." or "Plaintiff") filed a memorandum in opposition on August 1, 2024, and Defendant filed its reply on August 9, 2024. [Dkt. nos. 90, 91.] This matter came on for hearing on August 23, 2024. For the reasons set forth below, Defendant's Motion is granted, and Plaintiff's First Amended Complaint, filed May 2, 2024, [dkt. no. 83,] is dismissed with prejudice.

## BACKGROUND

This case arises from Defendant's alleged negligence in misidentifying A.B.'s older brother G.B.'s cause of death when G.B. was brought to the Tripler Army Medical Center ("Tripler"). [First Amended Complaint, filed 5/2/24 (dkt. no. 83), at ¶¶ 1, 7, 11, 13-16.] Plaintiff alleges: Caleb Humphrey and Natasha Beyer are A.B.'s and G.B's parents; [id. at ¶¶ 6-8;] G.B. was born in April 2016, and approximately three and a half weeks after birth, G.B. was taken to Tripler for injuries including rib fractures and brain lesions; see id. at ¶¶ 6-7; Tripler reported G.B.'s injuries to the State of Hawai`i Child Welfare Services ("CWS")[1] office; [id. at ¶ 9;] CWS was prepared to investigate the circumstances of G.B.'s injuries; [id. at ¶ 10;] G.B. died on May 20, 2016; [id. at ¶ 11;] the City and County of Honolulu Medical Examiner was prepared to conduct an autopsy; [id. at ¶ 12;] and staff at Tripler performed an autopsy, and concluded G.B. died a natural death from a herpes infection, [id. at ¶¶ 13-14]. Plaintiff alleges the autopsy finding was incorrect, and Tripler physicians did not consult a child abuse pediatrician or conduct an adequate review of G.B.'s medical records in making the finding. [Id. at ¶¶ 15-16.]

---

[1] The First Amended Complaint refers to CWS as Child Protective Services. See First Amended Complaint at ¶ 9.

Plaintiff alleges Tripler reported the autopsy findings to CWS. Plaintiff alleges that, in reliance on Tripler's finding, CWS did not investigate G.B.'s death or whether Beyer and Humphrey committed child abuse. [Id. at ¶¶ 17-19.]

A.B. was born at Tripler over a year later, on July 3, 2017, and discharged to Humphrey and Beyer. [Id. at ¶¶ 6, 20.] Plaintiff alleges that nine days later, on July 12, 2017, A.B. was brought to Tripler with multiple fractures, head injuries, and brain damage. [Id. at ¶ 21.] On August 3, 2019, Lieutenant Colonel Shelly Martin, M.D. ("Dr. Martin"), prepared a medical report that indicated A.B's injuries were "'non-accidental trauma,'" and stated that G.B's injuries were "'very concerning and non-accidental trauma should have been more thoroughly considered . . . A more in-depth look at his medical records and imaging could better determine the likelihood of non-accidental trauma.'" [Id. at ¶¶ 22-23 (alteration Plaintiff's).] Plaintiff alleges this report prompted state officials to reexamine G.B.'s death, and on December 8, 2017, the State of Hawai`i or the City and County of Honolulu recertified G.B's cause of death as "'blunt force injuries to the head,'" and the manner of death as "'homicide.'" [Id. at ¶¶ 24-25.] A supplemental autopsy report dated June 8, 2018 confirmed G.B.'s cause of death as "'blunt

force trauma'" and the manner of death as "'homicide.'" [Id. at ¶ 26.]

Plaintiff alleges that, had the cause of G.B.'s death been properly investigated by Tripler personnel, A.B. would not have been released into her parents' custody and would not have sustained the injuries she did sustain. [Id. at ¶ 28.]

Plaintiff alleges that Humphrey and Beyer were charged with physical abuse of A.B and/or the death of G.B., and Humphrey has been convicted of child endangerment and aggravated assault of A.B. [Id. at ¶ 27.] Beyer has been acquitted of criminal charges. See Motion, Declaration of Tracy J. Weinstein ("Weinstein Decl.") at ¶ 3.

A.B. was placed in the custody of the State of Hawai`i Department of Human Services on July 12, 2017. [Mem. in Opp., Declaration of Laura E. Ozak ("Ozak Decl.") at ¶ 9.] A.B.'s maternal grandparents provided a kinship foster placement in Maryland for A.B. around November 2018. [Id. at ¶ 10.] In April 2022, the family court in Hawai`i transferred the Hawai`i Revised Statutes Chapter 587 case to the Circuit Court of Montgomery County, Maryland, sitting as a Juvenile Court ("Maryland Juvenile Court"). [Id. at ¶ 12.] At present, the State of Maryland has jurisdiction over A.B., and the Montgomery County Department of Health and Human Services has custody of A.B. See id. at ¶ 25. In April 2024, Beyer was engaged in

4

reunification efforts. [Id. at ¶ 18; Weinstein Decl. at ¶ 3.]
Defendant represents that, on August 1, 2024, Plaintiff's
counsel stated reunification was denied, and the Maryland case
procedurally shifted to adoption by A.B.'s grandparents. [Reply,
Declaration of Tracy J. Weinstein at ¶¶ 2-3.]

    Plaintiff brings the following claims: a negligence
claim based upon the failure to determine and report that G.B.'s
injuries indicated he had been severely abused, resulting in
subsequent injury to A.B. ("Count I"); [First Amended Complaint
at ¶¶ 29-35;] a claim of negligence in the determination of
G.B.'s cause of death, which resulted in the closure of the CWS
investigation, and resulted in A.B.'s physical harm ("Count
II"); [id. at ¶¶ 36-39;] and a negligence claim based upon
Tripler staff's provision of false information about G.B's cause
of death to CWS, leading to the closure of the child abuse
investigation and A.B.'s subsequent injuries ("Count III"), [id.
at ¶¶ 40-43]. Plaintiff seeks general and special damages;
prejudgment and post-judgment interest; attorneys' fees and
costs; and any other appropriate relief. [Id. at pg. 10.]

    Defendant seeks dismissal of all claims. [Motion, Mem.
in Supp. at 13.]

## STANDARDS

### I.   Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes a defendant to move for dismissal of an action for "lack of subject-matter jurisdiction[.]" "A Rule 12(b)(1) jurisdictional attack may be facial or factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted). "A 'facial' attack accepts the truth of the plaintiff's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." Leite v. Crane, 749 F.3d 1117, 1121 (9th Cir. 2014) (citation and internal quotation marks omitted). "A 'factual' attack . . . contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." Id. (citations omitted).

Here, Defendant poses a factual challenge to jurisdiction by attaching exhibits outside the pleadings. See Safe Air, 373 F.3d at 1039. The Court "need not presume the truthfulness of the plaintiff's allegations," see id. (citation omitted), and may "resolve factual disputes concerning the existence of jurisdiction," see McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988) (citations omitted). Thus, Plaintiff "must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter

6

jurisdiction." <u>See</u> <u>Safe Air</u>, 373 F.3d at 1039 (citation and quotation marks omitted).

## II.   <u>Federal Rule of Civil Procedure 12(b)(6)</u>

The Court considers a motion to dismiss a complaint under the same standards applied on appeal. <u>See</u> <u>In re Nektar Therapeutics Sec. Litig.</u>, 34 F.4th 828, 835 (9th Cir. 2022) ("We review de novo the district court's dismissal of the complaint." (citation omitted)).

> The court must accept all well-pleaded allegations as true. <u>Lloyd v. CVB Fin. Corp.</u>, 811 F.3d 1200, 1205 (9th Cir. 2016). We also consider the complaint as a whole. <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007).
>
> To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

<u>Id.</u>

"Dismissal is appropriate when the complaint lacks a cognizable legal theory or sufficient factual allegations to support a cognizable legal theory." <u>Saloojas, Inc. v. Aetna Health of Cal., Inc.</u>, 80 F.4th 1011, 1014 (9th Cir. 2023) (citation and quotation marks omitted).

**DISCUSSION**

I. **Standing**

Defendant first argues Lane does not have standing as Guardian Prochein Ami[2] because circumstances have changed since Lane's appointment, and A.B.'s grandparents are now the appropriate "next friends." [Motion, Mem. in Supp. at 7-8.]

Lane was appointed as Guardian Prochein Ami for A.B. by the Circuit Court of the First Circuit State of Hawaii ("Hawai`i state court"). See Weinstein Decl., Exh. B (Order Granting *Ex Parte* Petition for Appointment of Guardian Prochein Ami, dated 7/11/19). The Hawai`i state court appointed Lane as Guardian Prochein Ami for A.B., "for the purpose of bringing an action in the First Circuit Court and/or Federal District Court and/or administrative claim under the Federal Tort Claims Act . . . ." [Id.]

Although factual circumstances have changed since Lane's appointment as Guardian Prochein Ami, these circumstances do not divest Lane of standing to proceed with the instant case. A minor may only bring suit in federal court through an appointed representative, defined as "a general guardian," "a committee," "a conservator," or "a like fiduciary." Fed. R. Civ. P. 17(c)(1). A minor "who **does not** have a duly appointed

---

[2] Prochein Ami means "next friend." See Black's Law Dictionary (12th ed. 2024) ("Next Friend").

representative may sue [in federal court] by a next friend or by a guardian ad litem."[3] Fed. R. Civ. P. 17(c)(2) (emphasis added). "As a general rule, a federal court cannot appoint a guardian ad litem in an action in which the infant . . . already is represented by someone who is considered appropriate under the law of the forum state." Bennett v. Cnty. of Riverside, No. ED CV 14-0579-VAP (DFM), 2014 WL 4162564, at *2 (C.D. Cal. Aug. 20, 2014) (quoting Hogan v. Fresno Cnty. Sheriff's Deputy Robinson, No. 03-6408, 2005 WL 2064113, at *7 (E.D. Cal. Aug. 24, 2005) (quoting T.W. by Enk v. Brophy, 124 F.3d 893, 896 (7th Cir. 1997))). Several district courts in the Ninth Circuit, and other circuit courts have followed this general rule. See Lee v. Retail Store Emp. Bldg. Corp., Case No. 15-CV-04768-LHK, 2016 WL 4191654, at *4 (N.D. Cal. Aug. 9, 2016) (collecting cases). Here, Lane has been appointed as Guardian Prochein Ami by the Hawai`i state court. Therefore, A.B. is already represented by someone who may bring a suit on her behalf under the laws of the

---

[3] As previously noted, Prochein Ami means "next friend." See Black's Law Dictionary (12th ed. 2024) ("Next Friend"). While "[t]raditionally, guardian ad litem and next friend were different offices," "[i]n modern practice, . . . the distinction is one of name only." AT&T Mobility, LLC v. Yeager, 143 F. Supp. 3d 1042, 1053 (E.D. Cal. 2015) (citations omitted). However, a Guardian Prochein Ami is an entirely different entity from a general guardian. See id. at 1051-52 (explaining that, while a general guardian has general control of the ward's person and estate, a guardian ad litem is appointed by the court to appear in a lawsuit on behalf of an incompetent or minor person).

forum state. Lane, as Guardian Prochein Ami, may therefore continue to pursue the instant case on A.B.'s behalf.

Defendant asserts <u>United States v. Bennett</u>, 147 F.3d 912, 914 (9th Cir. 1998), and <u>Paz v. Arizona</u>, No. CV-14-02377-TUC-BPV, 2017 WL 11630876 (D. Ariz. Aug. 16, 2017), demonstrate a federal court will not recognize a next friend for a minor child in the legal custody of a parent capable of making decisions about filing suit. <u>See</u> Motion, Mem. in Supp. at 7-8. In <u>Bennett</u>, the Ninth Circuit held that, under Washington law, when a mother has legal custody of her minor daughter and the father has neither legal custody, guardianship, or guardian ad litem status, the father did not have standing to bring a claim on the child's behalf. <u>See</u> <u>Bennett</u>, 147 F.3d at 914. Similarly, in <u>Paz</u>, the district court held that, when a mother has sole legal custody of her child, the father, who had neither custody nor guardianship over the daughter, could not bring a suit on his daughter's behalf. <u>See</u> 2017 WL 11630876, at *1-2. Both cases are inapposite to the instant circumstances, because, critically, Lane was previously appointed as Guardian Prochein Ami in the Hawai`i state court. Defendant points to no authority demonstrating that, if custody changes in the Maryland Juvenile Court proceeding, Lane's appointment as Guardian Prochein Ami is inappropriate.

Of course, if any potential conflict of interest is identified or if Lane acts contrary to A.B.'s best interests, or refuses or is unable to act, the Court has the authority to disqualify Lane. See, e.g., Elliott v. Versa CIC, L.P., 328 F.R.D. 554, 556 (S.D. Cal. 2018); Est. of Elkins v. Pelayo, Case No. 1:13-cv-01483-AWI-SAB, 2020 WL 977931, at *14 (E.D. Cal. Feb. 28, 2020). At present, there is no indication that Lane is acting contrary to A.B.'s interests or otherwise has a conflict or is unable to act, nor does Defendant so argue. See Motion, Mem. in Supp. at 7-8. Therefore, Lane may continue to litigate the case as A.B.'s Guardian Prochein Ami.[4]

## II.  **Duty**

Defendant argues it did not owe A.B. a duty because at the time of G.B.'s hospitalization, death, and autopsy, A.B. was not yet conceived and Beyer was not yet pregnant with A.B. Further, Defendant argues the causal link between the failure to report possible child abuse and the allegedly inaccurate autopsy findings is too attenuated from A.B.'s subsequent injuries. [Motion, Mem. in Supp. at 8-11.] Plaintiff contends the challenged actions are voluntary, affirmative actions of Tripler physicians that created a dangerous condition, and the harm A.B.

---

[4] In the alternative to finding Lane lacks standing, Defendant requests a stay. [Reply at 3-5.] In light of the Court's ruling as detailed below, the Court will not address this alternative request.

11

suffered as a result of that condition was foreseeable. Plaintiff cites to caselaw supporting the imposition of a duty to a child that has not yet been conceived at the time of the allegedly negligent act. [Mem. in Opp. at 10-15.]

The Federal Tort Claims Act ("FTCA") provides liability only in "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Because the alleged acts or omissions took place in Hawai`i, see, e.g., First Amended Complaint at ¶¶ 1-2, 6-7, 13-20, Hawai`i tort law is controlling. Under Hawai`i law, "[i]n order to establish a defendant's liability for negligence, a plaintiff must prove (1) a duty recognized by the law that the defendant owed to the plaintiff; (2) a breach of the duty; (3) that the defendant's breach was the legal cause of the plaintiff's harm; and (4) actual damages." O'Grady v. State, 140 Hawai`i 36, 43, 398 P.3d 625, 632 (2017) (citation omitted). "It is well settled that a negligence action lies only where there is a duty of care owed by the defendant to the plaintiff." Ah Mook Sang v. Clark, 130 Hawai`i 282, 291, 308 P.3d 911, 920 (2013) (citation omitted).

Whether a duty is owed in a particular case depends on the facts and circumstances of that case. Id. at 291, 308 P.3d at 920. "[T]he defendant's obligation to refrain from particular

12

conduct [or, as the circumstances may warrant, to take whatever affirmative steps are reasonable to protect another] is owed only to those who are foreseeably endangered by the conduct and only with respect to those risks or hazards whose likelihood made the conduct [or omission] unreasonably dangerous." Pulawa v. GTE Hawaiian Tel, 112 Hawai`i 3, 12, 143 P.3d 1205, 1214 (2006) (alteration in original) (emphases and citations omitted). "[I]f it is not reasonably foreseeable that the particular plaintiff will be injured if the expected harm in fact occurs, the defendant does not owe that plaintiff a duty reasonably to prevent the expected harm." Id. at 12, 143 P.3d at 1214 (citations omitted). "Similarly, but not synonymously, if the harm is not reasonably foreseeable, the defendant will not be deemed to have breached the duty of care that he or she owes to a foreseeable plaintiff." Doe Parents No. 1 v. State, Dep't of Educ., 100 Hawai`i 34, 72, 58 P.3d 545, 583 (2002), as amended (Dec. 5, 2002) (citation omitted).

Because the Hawai`i Supreme Court has not determined whether a duty to a child not yet conceived could exist under facts similar to those in this case, the Court must predict whether the Hawai`i Supreme Court would hold that Tripler held a duty toward A.B. at the time Tripler conducted G.B.'s autopsy and made the autopsy findings. See Trishan Air, Inc. v. Fed. Ins. Co., 635 F.3d 422, 427 (9th Cir. 2011) ("When interpreting

13

state law, federal courts are bound by decisions of the state's highest court. In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." (citations and quotation marks omitted)).

In determining whether a duty exists, courts in Hawai`i first analyze the pertinent policy considerations:

> In considering whether to impose a duty of reasonable care on a defendant, we recognize that duty is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection. Legal duties are not discoverable facts of nature, but merely conclusory expressions that, in cases of a particular type, liability should be imposed for damage done. In determining whether or not a duty is owed, we must weigh the considerations of policy which favor the appellants' recovery against those which favor limiting the appellees' liability. . . .

Lee v. Corregedore, 83 Hawai`i 154, 166, 925 P.2d 324, 336 (1996) (citations omitted).

Plaintiff cites two Hawai`i cases, Castro v. Melchor, 142 Hawai`i 1, 414 P.3d 53 (2018), and Omori v. Jowa Hawai`i Co., 91 Hawai`i 157, 981 P.2d 714 (Ct. App. 1999),[5] as well as out-of-jurisdiction cases to argue Tripler possessed a duty to

---

[5] The Hawai`i Supreme Court affirmed Omori, 91 Hawai`i 157, 981 P.2d 714, as modified. 91 Hawai`i 146, 981 P.2d 703 (1999).

A.B. at the time of G.B.'s care and autopsy. [Mem. in Opp. at 11-15.]

In Castro, the Hawai`i Supreme Court held that the estate of a viable fetus can recover for loss of enjoyment of life pursuant to Hawaii's survival statue, Hawai`i Revised Statutes Section 663-7. Castro, 142 Hawai`i at 11-12, 414 P.3d at 63-64. The supreme court also determined that a pregnant woman does not owe a duty of care to the fetus she carries. Id. at 16, 414 P.3d at 68. In Omori, the Hawai`i Intermediate Court of Appeals ("ICA") held that a child may bring a tort action against his mother's employer for in utero injuries sustained as a result of a work-related accident involving the child's mother, pursuant to Hawai`i Revised Statutes Section 386-5, the exclusive remedy provision of the Hawai`i Workers' Compensation Law. Omori, 91 Hawai`i at 158, 981 P.2d at 715. Plaintiff Kathleen Omori became pregnant in October 1992 and suffered a premature rupture of the membrane as a result of being forced to continue working after her water broke in March 1993, resulting in her child's premature birth in April 1993. Id. at 158, 981 P.2d at 715. The ICA noted the majority of jurisdictions allow tort actions for prenatal injuries negligently inflicted, if the injured child is born alive. Id. at 161-62, 981 P.2d at 718-19 (citing cases).

Castro and Omori are not directly applicable to the instant case because neither case involves the claims of a child that originate before that child has been conceived. However, the policy considerations the supreme court examined in Castro are instructive. In Castro, the supreme court found a pregnant woman does not owe a duty of care to the fetus she carries, based on "significant policy considerations." Castro, 142 Hawai`i at 16, 414 P.3d at 68. Among pertinent policy considerations such as a woman's right to privacy and autonomy, the supreme court noted that recognizing such a duty "'would present an almost unlimited number of circumstances that would likely give rise to litigation.'" Id. at 16, 414 P.3d at 68 (quoting Remy v. MacDonald, 440 Mass. 675, 682-83, 801 N.E.2d 260, 266-67 (2004)). This reasoning applies to the instant case – extending a duty to another before that person has been conceived would greatly expand potential liability. Therefore, the reasoning in Castro indicates a duty may not exist in this case.

Plaintiff also cites to cases in which physicians failed to administer Rh immune globulin to a Rh-negative mother following the birth of a child, a miscarriage, or an abortion, which then affected a child born later. [Mem. in Opp. at 11-12 (citing Renslow v. Mennonite Hosp., 67 Ill. 2d 348, 349, 367 N.E.2d 1250, 1251 (1977); Lynch v. Scheininger, 744 A.2d 113

16

(N.J. 2000); <u>Lough v. Rolla Women's Clinic, Inc.</u>, 866 S.W.2d 851 (Mo. 1993); <u>Torres v. Sarasota Cnty. Pub. Hosp. Bd.</u>, 961 So.2d 340 (Fla. Dist. Ct. App. 2007)).] In addition, Plaintiff cites to products liability tort cases where the mother's exposure to products resulted in injury to a later-conceived child. [<u>Id.</u> at 13 (citing <u>Jorgensen v. Meade Johnson Lab'ys, Inc.</u>, 483 F.2d 237, 241 (10th Cir. 1973); <u>McMahon v. Eli Lilly & Co.</u>, 774 F.2d 830 (7th Cir. 1985)).] These cases fail to persuade the Court because the instant case does not involve negligence toward the mother by a doctor that had a direct medical result on the later-born child, or a mother's exposure that led to injury to a child she carried later. Rather, the instant case involves the allegedly negligent diagnosis of A.B.'s sibling, conducting his autopsy, and the reporting of the erroneous autopsy findings to CWS and the medical examiner. Here, the causal chain is much more attenuated than in any case Plaintiff cites. Plaintiff does not cite any other case involving the failure to prevent the abuse of a child related to inaccurate medical findings of a sibling, or anything akin to an inaccurate autopsy, in Hawai`i or any other jurisdiction. <u>See generally</u> Mem. in Opp. at 6-17.

        In addition to analyzing policy considerations, courts in Hawai`i have considered the following factors in determining whether a duty exists:

17

> whether a special relationship exists . . . , the
> foreseeability of harm to the injured party, the
> degree of certainty that the injured party
> suffered injury, the closeness of the connection
> between the defendants' conduct and the injury
> suffered, the moral blame attached to the
> defendants, the policy of preventing harm, the
> extent of the burden to the defendants and
> consequences to the community of imposing a duty
> to exercise care with resulting liability for
> breach, and the availability, cost, and
> prevalence of insurance for the risk involved.

Ah Mook Sang, 130 Hawai`i at 293, 308 P.3d at 922 (quoting Blair

v. Ing, 95 Hawai`i 247, 260, 21 P.3d 452, 465 (2001)).

The determinative factor in the instant case is the

closeness of the connection between Defendant's conduct and the

injury suffered. Defendant's allegedly negligent autopsy, and

subsequent reporting of the autopsy findings to CWS are too far

removed from CWS's subsequent failure to investigate possible

child abuse before A.B. was conceived, and A.B.'s eventual birth

and unfortunate injuries A.B. sustained shortly after birth.

Relatedly, it was not certain at the time of G.B.'s autopsy that

A.B. would suffer an injury.

Further, the potential for harm to a future sibling of

G.B. was only remotely foreseeable at the time: Beyer was not

yet pregnant with another child, it was not known at the time of

Tripler's autopsy of G.B. whether G.B. had suffered physical

abuse, and CWS could have conducted an investigation pursuant to

Hawai`i Revised Statutes Section 587A-11. <u>See</u> First Amended
Complaint at ¶¶ 6-7, 9-10.

The remaining factors considered collectively do not
support the existence of a duty. First, Plaintiff has not
alleged or argued Defendant possessed a "special relationship"
with A.B. Second, while the moral blame is "difficult to
qualify," <u>see</u> <u>Ah Mook Sang</u>, 130 Hawai`i at 295, 308 P.3d at 924,
here this factor appears to be neutral. While reaching an
incorrect conclusion on an autopsy may be a matter of medical
debate, and medical personnel are not infallible, based on the
allegations in the First Amended Complaint, the errors in
Tripler's conducting of G.B.'s autopsy appear particularly
egregious. <u>See</u> First Amended Complaint at ¶¶ 23-26. Third, the
availability of insurance factor need not be addressed by the
Court, given the absence of evidence in the record concerning
this factor. <u>See</u> <u>Ah Mook Sang</u>, 130 Hawai`i at 296, 308 P.3d at
925. While the final two factors — the policy of preventing
harm, and the extent of the burden to the defendants and
consequences to the community of imposing a duty to exercise
care with resulting liability for breach — weigh in favor of
imposing a duty of care, here, these two factors do not outweigh
all of the foregoing factors.

"[I]n determining the scope of the defendant's duty,
the focus is on the defendant's viewpoint, that is, whether the

19

defendant could reasonably foresee the plaintiff's injury."
Pulawa, 112 Hawai`i at 16, 143 P.3d at 1218 (emphasis, citation,
and quotation marks omitted). At the time of G.B.'s autopsy,
A.B. had not yet been conceived, and from Defendant's viewpoint,
there was no way to know whether G.B. would have a sibling.
Further, there were many other possible attenuating
circumstances which could have resulted in no harm coming to
A.B., including investigation by CWS into the suspected abuse of
G.B. "[I]f it is not reasonably foreseeable that the particular
plaintiff will be injured if the expected harm in fact occurs,
the defendant does not owe that plaintiff a duty reasonably to
prevent the expected harm." Doe Parents No. 1, 100 Hawai`i at
72, 58 P.3d at 583 (citation omitted). At the time of G.B.'s
autopsy, it was not reasonably foreseeable that the autopsy, if
negligently conducted, would result in harm to A.B. Based on the
foregoing, accepting all of Plaintiff's factual allegations as
true, see Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), the Court
predicts the Hawai`i Supreme Court would not find that Defendant
owed A.B. a duty of care at the time that Tripler conducted
G.B.'s autopsy. Therefore, Plaintiff's negligence claims must be
dismissed.

Finally, Defendant argues in a footnote that the case
should be dismissed on the alternative ground that Plaintiff

20

cannot establish causation. See Motion, Mem. in Supp. at 11 n.5.[6]
Given the Court's ruling above, the Court need not rule on this
issue. For the sake of completeness, the Court notes that action
or inaction of Tripler staff does not appear to be the legal
cause of A.B.'s injury. To establish causation, the plaintiff
must first establish that the defendant's "negligence was a
substantial factor in causing plaintiff's injuries." O'Grady,
140 Hawai`i at 44, 398 P.3d at 633 (citations and quotation
marks omitted). "[A] substantial factor is one that a reasonable
person would consider to have contributed to the harm." Id. at
45, 398 P.3d at 634 (citations omitted). Second, causation is
established if "there is no rule of law relieving the actor from
liability because of the manner in which his [or her] negligence
has resulted in the harm." Id. at 44, 398 P.3d at 633
(alteration in O'Grady) (citation omitted). One such rule of law
is the rule of superseding causes: "[a] separate act that occurs
after the defendant's culpable conduct will be considered a
superseding cause that relieves the defendant of liability if
the second act break[s] the chain of causation." Id. at 47, 398

---

[6] Defendant's argument is only contained in a footnote and
Defendant only cites Ninth Circuit cases applying out-of-state
law. The out-of-state cases that Defendant cites are: Pacific
Boring, Inc., v. Staheli Trenchless Consultants, Inc., 708 F.
App'x 324, 325 (9th Cir. 2017) (applying Washington law), and
Steinle v. United States, 17 F.4th 819, 822 (9th Cir. 2021)
(applying California law).

P.3d at 636 (second alteration in original) (citation and internal quotation marks omitted). G.B.'s parents' acts and omissions, individually and in concert, certainly provide strong evidence of a superseding cause.[7]

Based on the foregoing, the First Amended Complaint is dismissed. Because the Court finds that Defendant owed no duty to Plaintiff as a matter of law, dismissal is with prejudice because it is clear that the claims cannot be saved by amendment. See Hoang v. Bank of Am., N.A., 910 F.3d 1096, 1102 (9th Cir. 2018) ("Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment." (citation and quotation marks omitted)).

### CONCLUSION

On the basis of the foregoing, Defendant's Motion to Dismiss Plaintiff's Amended Complaint [ECF No. 83], filed June 17, 2024 is GRANTED. Plaintiff's First Amended Complaint, filed May 2, 2024 is DISMISSED WITH PREJUDICE. There being no remaining claims in this case, the Clerk's Office is DIRECTED to enter judgment in favor of Defendant on **November 7, 2024.**

IT IS SO ORDERED.

---

[7] The Court will not address Defendant's argument concerning immunity under Hawai`i Revised Statutes Section 350-3 because sufficient grounds exist to dismiss with prejudice without reaching this issue. See Motion, Mem. in Supp. at 11-13.

DATED AT HONOLULU, HAWAII, October 23, 2024.



/s/ Leslie E. Kobayashi

Leslie E. Kobayashi
Senior U.S. District Judge

**STEVE W. LANE, AS GUARDIAN PROCHEIN AMI FOR JANE "A.G." DOE, A MINOR AND INCAPACITED PERSON VS. UNITED STATES OF AMERICA; CV 20-00207 LEK-RT; ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT [ECF NO. 83]**